# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46632-5-II |
| Respondent, | |
| v. | |
| ANTHONY J. TOLMAN, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Anthony Joshua Tolman appeals his convictions for attempting to elude a pursuing police vehicle and possession of a stolen vehicle.  Tolman argues that (1) there was insufficient evidence to convict him of attempting to elude a pursuing police vehicle and the aggravating factor, endangerment by eluding a police vehicle, because there was no evidence that he drove in a reckless manner or endangered any other person, (2) the amended information failed to allege all essential elements and necessary facts for both charges, (3) the trial court's reasonable doubt instruction shifted the burden of proof and was improper, and (4) the trial court erred when it failed to consider whether he had the present or future ability to pay the imposed legal financial obligations (LFOs) at sentencing.

We hold that (1) there was sufficient evidence to convict Tolman of attempting to elude a pursuing police vehicle and the aggravating factor, endangerment by eluding a pursuing police vehicle, (2) the amended information included the essential elements and necessary facts for Count I, attempting to elude a pursuing police vehicle, but that the amended information was insufficient for Count II, possession of a stolen vehicle, because it did not mention the essential element of

"withhold or appropriate," and (3) the trial court's reasonable doubt instruction was proper. Further, we decline to review Tolman's imposed LFOs because he failed to object to them at sentencing. Accordingly, we affirm Tolman's conviction for Count I, attempting to elude a pursuing police vehicle, reverse his conviction for Count II, possession of a stolen vehicle, and remand to the trial court for further proceedings.

FACTS AND PROCEDURAL HISTORY

Around 2:00 a.m. on June 17, 2014, after receiving a report of a stolen vehicle out of King County, Pierce County Deputy Scott Wheeler, in his marked police vehicle, initiated a traffic stop of a car matching the description and license plate number of the stolen vehicle. Wheeler activated the emergency lights on his marked police vehicle, signaling the car to pull over. The car accelerated, and Wheeler pursued.

During the pursuit, the car reached and maintained speeds of 50 mph or more, including in a 35 mph zone, ran a stop sign, and sped through a grocery store parking lot, hitting a cart rack and popping a tire before returning to the main road. The car, with its flat tire sparking, swerved into the center and oncoming lanes.

As the pursuit approached an intersection, Wheeler saw a car stopped at the light in the left turn lane, preparing to turn. The car Wheeler was pursuing initially started to go around the left side of the stopped car, into the oncoming traffic lane, but it swerved back into the right lane of travel. Because the car he was pursuing was swerving into oncoming traffic lanes, Wheeler was concerned about it colliding with the car in the turn lane and other vehicles. The pursuit ended when the car stopped in a car dealership's parking lot, and its driver, who Wheeler identified as Anthony Tolman, fled on foot.

No. 46632-5-II

Police arrested Tolman the next day and charged him with attempting to elude a pursuing police vehicle (Count I), possession of a stolen vehicle (Count II), driving with a suspended license, and possession of stolen property (Count III).[1]  For Count I, attempting to elude a pursuing police vehicle, the State also charged an aggravating factor, endangerment by eluding a police vehicle, alleging that Tolman,

> [O]n or about the 17th day of June, 2014, did unlawfully, feloniously, and willfully fail or refuse to immediately bring his vehicle to a stop and drive his vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring his vehicle to a stop by a uniformed police officer in a vehicle equipped with lights and sirens, contrary to RCW 46.61.024(1) . . . [and he] endangered one or more persons other than [himself] or the pursuing law enforcement officer, contrary to 9.94A.834.

Clerk's papers (CP) at 8.  For Count II, possession of a stolen vehicle, the State alleged that Tolman,

> [O]n or about the 17th day of June, 2014, did unlawfully and feloniously knowingly possess a stolen motor vehicle, knowing that it had been stolen, contrary to RCW 9A.56.068 and 9A.56.140.

CP at 9.

After closing arguments on the third day of trial, the trial court instructed the jury.  Jury instruction no. 2 read,

> The defendant has entered a plea of not guilty.  That plea puts in issue every element of each crime charged.  The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt.  The defendant has no burden of proving that a reasonable doubt exists.
>
> A defendant is presumed innocent.  This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

---

[1] Tolman only appeals his convictions for Count I, attempting to elude a pursuing police vehicle, and Count II, possession of a stolen vehicle.

3

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

CP at 16. Tolman did not object to this instruction. The jury convicted Tolman on all counts, including the aggravating factor, endangerment by eluding a police vehicle. At sentencing, the trial court imposed $1,300 in LFOs as a condition of Tolman's sentence.[2] Tolman did not raise any objection to the imposition of the LFOs at sentencing. Tolman appeals his convictions and sentence.

## ANALYSIS

### I. SUFFICIENT EVIDENCE

Tolman argues that there was insufficient evidence to convict him of attempting to elude a pursuing police vehicle because there was no evidence that he was driving in a reckless manner. Tolman also argues that there was insufficient evidence to support the aggravating factor that he endangered one or more persons because the State failed to prove that there were any bystanders present. We disagree.

### A. STANDARD OF REVIEW

We review sufficiency of evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a challenge to the sufficiency of the evidence, the defendant admits the truth of the

---

[2] The trial court imposed the following mandatory LFOs: (1) $500 for the crime victim assessment, (2) $100 for the DNA database fee, and (3) $200 for the criminal filing fee. The court also imposed a $500 discretionary LFO for Tolman's court-appointed attorney.

State's evidence and all reasonable inferences that can be drawn from it. *Homan*, 181 Wn.2d at 106.

B. DRIVING IN A RECKLESS MANNER

RCW 46.61.024 states in part,

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony.

RCW 46.61.024(1). "[D]riving 'in a reckless manner' means 'driving in a rash or heedless manner, indifferent to the consequences.'" *State v. Roggenkamp*, 153 Wn.2d 614, 622, 106 P.3d 196 (2005) (quoting *State v. Bowman*, 57 Wn.2d 266, 270-71, 356 P.2d 999 (1960)).

Tolman argues that his driving "did not rise to the level of rash or heedless" because the pursuit encountered only one other stationary vehicle, and there was no indication whether the vehicle was occupied or that any other bystanders were present. Br. of Appellant at 8. However, the State does not need to show that Tolman endangered anyone else, or that a high probability of harm actually existed in order to prove that Tolman drove in a "reckless manner." *State v. Whitcomb*, 51 Wn. App. 322, 327, 753 P.2d 565 (1988).

Wheeler testified that Tolman drove 50 mph through an intersection, running a stop sign, and that he reached a speed of 56 mph in a 35 mph zone. Tolman also drove about 50 mph through the parking lot, where he hit a metal cart rack, popped a tire, returned to the street, and continued to drive on his sparking rim. Throughout the pursuit, Tolman drove in the center lane and swerved into oncoming traffic lanes. At an intersection, another car was stopped, preparing to turn left from the left-hand turn lane. Tolman, still driving about 50 mph, started to swerve around the left

side of the car and into oncoming traffic, and then came back into the right lane of travel. Wheeler was concerned that Tolman would collide with the other vehicle. These facts would allow a rational trier of fact to conclude that Tolman was driving in a rash or heedless manner, indifferent to the consequences. Accordingly, Tolman's argument fails and we hold that there was sufficient evidence that he drove in a reckless manner.

## C.  AGGRAVATING FACTOR—ENDANGERMENT BY ELUDING A PURSUING POLICE VEHICLE

Tolman argues that there was insufficient evidence to convict him of the aggravating factor, endangerment by eluding a pursuing police vehicle, because the State failed to prove that (1) anyone other than Wheeler and Tolman were present when Tolman drove the vehicle to get away and (2) Tolman's conduct threatened any other person with physical injury or harm.

RCW 9.94A.834(1), endangerment by eluding a police vehicle, provides,

> (1) The prosecuting attorney may file a special allegation of endangerment by eluding . . . to show that one or more persons other than the defendant or the pursuing law enforcement officer were threatened with physical injury or harm by the actions of the person . . . attempting to elude a police vehicle.

The State must prove beyond a reasonable doubt that the defendant committed the crime of attempted eluding a pursuing police vehicle while endangering individuals other than themselves or the pursuing law enforcement officer.  RCW 9.94A.834(2).

After Tolman collided with a cart rack in the grocery store parking lot and popped the car's tire, Tolman encountered another car in the left-hand turn lane at an intersection. The car was waiting to turn left. As Tolman approached the other vehicle, Wheeler testified that Tolman, who was driving in the middle and oncoming lanes, swerved as if he was going around the other vehicle on the left side, and then swerved back into the right lane of travel. Wheeler testified that he was

concerned about Tolman colliding with the car in the turn lane. These facts would allow a rational trier of fact to conclude that there was another person in the stopped car at the intersection and that Tolman's attempt to elude Wheeler threatened that other person with physical injury or harm. Accordingly, Tolman's argument fails and we hold that there was sufficient evidence that he endangered one or more persons when he attempted to elude Wheeler.

## II. THE AMENDED INFORMATION

Next, Tolman argues that (1) the State did not properly charge him with attempting to elude (Count I) a pursuing police vehicle and that the amended information was factually deficient because it did not specify how Wheeler signaled Tolman to stop, (2) for the unlawful possession of a stolen vehicle charge (Count II), the amended information is legally deficient because the State failed to allege that Tolman "withheld or appropriated" the vehicle, and (3) the amended information is factually insufficient and vague because it fails to allege critical facts, exposing him to a second prosecution for Counts I and II.

We hold that Count I of the amended information contained the required essential elements and alleged sufficient facts to provide Tolman sufficient notice of the charged offense, and that Tolman waived his allegation of vagueness for Count I. But we agree with Tolman and hold that the amended information was legally deficient with regard to Count II, the possession of stolen vehicle charge.

7

No. 46632-5-II

A. Legal Principles

We review a charging document's adequacy de novo. *State v. Satterthwaite*, 186 Wn. App. 359, 362, 344 P.3d 738 (2015). A constitutionally sound charging document includes all essential elements of a crime, statutory or otherwise, providing notice to the accused of the nature and cause of the accusation against him. *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). "'An essential element is one whose specification is necessary to establish the very illegality of the behavior charged.'" *State v. Johnson*, 180 Wn.2d 295, 300, 325 P.3d 135 (2014) (quoting *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013)). Mere citations to the criminal code section and title of the offense do not satisfy the essential element requirement. *Zillyette*, 178 Wn.2d at 162. When the defendant challenges the charging document's sufficiency for the first time on appeal, we construe the document liberally in favor of validity. *Satterthwaite*, 186 Wn. App. at 362; *State v. Pittman*, 185 Wn. App 614, 619, 341 P.3d 1024 (2015). The test for the liberal interpretation of the document asks two questions:

> (1) [D]o the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?

*Kjorsvik*, 117 Wn.2d at 105-06. If we cannot construe the document to give notice of or to contain in some manner the essential elements of an offense, the document is insufficient, and even the most liberal reading cannot cure it. *Satterthwaite*, 186 Wn. App. at 362-63.

B. Attempting to Elude a Pursuing Police Vehicle

Tolman argues that the State failed to specifically allege whether Wheeler's signal to Tolman to stop was made by hand, voice, emergency light, or siren and that, because the officer's

signal to stop is an essential element of Count I, attempting to elude a pursuing police vehicle, the amended information is deficient. Tolman also argues that our holding in *State v. Pittman*[3] is incorrect and asks us to overrule it. We disagree with Tolman and decline to overrule *Pittman*.

The first sentence of RCW 46.21.024(1), quoted above, sets out the essential elements of the crime of attempting to elude, one of which is the requirement that the defendant must have been given a visual or audible signal to stop. RCW 46.61.024(1); *Pittman*, 185 Wn. App. at 620. The second and third sentences of RCW 46.61.024(1) state,

> The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

The legislature's intent in RCW 46.61.024(1) is not to allow defendants to freely ignore certain types of law enforcement signals like whistles, flares, or written signs. *Pittman*, 185 Wn. App. at 621-22. Thus, the specific manner by which a police signals someone to stop is not an essential element of the crime of attempting to elude a pursuing police vehicle. *Pittman*, 185 Wn. App at 623.

We read RCW 46.61.024(1) to require that the State need only prove that the defendant disregarded some signal by the police to stop, and that the defendant failed to do so. *Pittman*, 185 Wn. App. at 621. In *Pittman*, we interpreted the meaning of RCW 46.61.024(1). *Pittman*, 185 Wn. App at 620-622. In that case, during a pursuit after an attempted traffic stop, the police vehicles' lights and sirens were in use, and, when the defendant exited the car, he failed

---

[3] *State v. Pittman*, 185 Wn. App. 614, 341 P.3d 1024 (2015).

to stop fleeing on foot after police gave him verbal commands to stop. *Pittman*, 185 Wn. App. at 617-18. We held that Pittman's interpretation of RCW 46.61.024(1), to require the charging document to specify and constrain the manner of signal to "hand, voice, emergency light, or siren," undermined the legislature's intent. *Pittman*, 185 Wn. App. at 618, 621-22. We held that as long as the police have reasonably signaled the defendant to stop in some manner, that the use of the phrase "visual or audible" in the charging document does not overlook an essential element of the crime. *Pittman*, 185 Wn. App at 622-23.

Here, like in *Pittman*, the amended information alleged that Wheeler gave a "visual or audible signal" to Tolman to stop. CP at 8. Wheeler testified that he turned on his patrol car's emergency lights to initiate the traffic stop, and that Tolman sped away. Wheeler gave Tolman a visual signal to stop, which Tolman disregarded, and the manner in which the officer gave the signal is not an essential element of the crime.

We will overrule a prior decision only upon a clear showing that the rule it announced is incorrect and harmful. *State v. W.R.*, 181 Wn.2d 757, 768, 336 P.3d 1134 (2014) (citing *State v. Barber*, 170 Wn.2d 854, 863-65, 248 P.3d 494 (2001)). Because Tolman fails to show that our holding in *Pittman* is incorrect or harmful, we decline to overrule it. Accordingly, we hold that the amended information was factually and legally sufficient and included the essential facts and elements of the crime of attempting to elude a pursuing police vehicle.

C. UNLAWFUL POSSESSION OF A STOLEN VEHICLE

Tolman argues that, because the amended information for Count II failed to allege that he "withheld or appropriated" the vehicle, the amended information is legally deficient and we should reverse his conviction for Count II. We agree with Tolman.

10

RCW 9A.56.068(1) states that a person is guilty of possessing a stolen motor vehicle, if the person possesses a stolen motor vehicle. And RCW 9A.56.140(1) states,

> "Possessing stolen property" means knowingly to receive, retain, possess, conceal or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

The terms "withhold or appropriate" as set forth in RCW 9A.56.140(1) are implicitly incorporated into RCW 9A.56.068(1). *Satterthwaite*, 186 Wn. App. at 363-64. "Withhold or appropriate" is an essential element of possession of stolen motor vehicle. *Satterthwaite*, 186 Wn. App. at 364.

"The test for whether a term is an essential element of an offense is whether the term's specification is necessary to establish the very illegality of the behavior charged, rather than a term that defines and limits the elements' scope." *Satterthwaite*, 186 Wn. App. at 364 (citing *Johnson*, 180 Wn.2d at 302). In *Satterthwaite*, we held, as a matter of first impression, that it is the withholding or appropriating of stolen property by someone other than the true owner that makes possession illegal, making RCW 9A.56.140(1)'s "withhold or appropriate" an essential element of the charged crime. *Satterthwaite*, 186 Wn. App. at 364. This distinguishes between a person attempting to return known stolen property, and a person choosing to keep, use, or dispose of it. *Satterthwaite*, 186 Wn. App at 365.

Here, the amended information did not include the legally required elements of "withhold or appropriate," but alleged that Tolman "did unlawfully and feloniously knowingly possess a stolen motor vehicle, knowing that it had been stolen, contrary to RCW 9A.56.068 and 9A.56.140." CP at 9. The State concedes that the amended information does not contain any mention of "withhold or appropriate" but distinguishes *Satterthwaite,* arguing that the charging

No. 46632-5-II

language includes the phrase "'knowing that it was stolen,'" cites to RCW 9A.56.068 and .140. Supp. Br. of Resp't at 2 (citing CP 8-9). The State argues that a fair construction of the amended information incorporates the "withhold or appropriate" elements from the reference to RCW 9A.56.068 and .140. However, mere citations to the code chapter and title of offense are not sufficient to meet the essential elements requirement or satisfy due process requirements to provide notice to the defendant of all essential elements of the allegations as charged. *Zillyette*, 178 Wn.2d at 162. Thus, the amended information failed to include the essential elements of "withhold or appropriate," and we hold that the amended information was legally insufficient for Count II. Accordingly, we reverse Tolman's conviction for Count II, possession of a stolen motor vehicle, and remand for further proceedings.

D. VAGUENESS

Tolman argues that the amended information is factually insufficient and vague because Count I[4] fails to name the officer that Tolman allegedly eluded and does not specify the signal that he allegedly ignored. We disagree.

More than merely listing the essential elements, the information must allege the particular facts supporting them. *State v. Nonog*, 169 Wn.2d 220, 226, 237 P.3d 250 (2010). Necessary facts can appear in any form. *State v. Williams*, 162 Wn.2d 177, 185, 170 P.3d 30 (2007). We distinguish between a constitutionally defective information and those that are merely vague. *State v. Leach*, 113 Wn.2d 679, 686-87, 782 P.2d 552 (1989). A charging document which states the essential elements of a crime, but is vague on some other significant matter, may be corrected

---

[4] Because we reverse Tolman's conviction on Count II on other grounds, we do not address his vagueness challenge regarding Count II.

12

under a bill of particulars. *Leach*, 113 Wn.2d at 687. A defendant may not challenge a charging document for "vagueness" on appeal if no bill of particulars was requested at trial. *Leach*, 113 Wn.2d at 687.

Here, the amended information alleged the specific date of the crime charged – June 17, 2014. The amended information also alleged that (1) Tolman failed to stop, (2) he drove in a "reckless manner," (3) the officer gave him a "visual or audible" signal to stop, (4) the officer was in uniform, and (5) the officer was in a vehicle equipped with lights and sirens. CP at 8. Tolman argues that the information's failure to name the officer and specify what signal the officer gave, renders the information vague, and exposes him to double jeopardy. As we hold above and in *Pittman*, the manner in which Wheeler signaled Tolman to stop is not an essential element and its absence does not render the information vague or deficient. If the identity of the officer was unclear, Tolman could have requested a bill of particulars because the officer's identity is not an essential element of the crime. *See State v. Plano*, 67 Wn. App. 674, 678-80, 838 P.3d 1145 (1992) (name of assault victim was not essential element of the crime and could have been provided by a bill of particulars). Thus, because Tolman did not request a bill of particulars, he waives his allegation of vagueness. Accordingly, we hold that Count I of the amended information is neither factually insufficient nor vague.

### III. JURY INSTRUCTION

Tolman argues that the trial court's reasonable doubt instruction misstated the law of reasonable doubt, improperly shifting the burden of proof from the State to him. Because jury instruction no. 2 is identical to 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01 at 85 (3d ed. 2008) (WPIC), Tolman's argument fails.

No. 46632-5-II

As a threshold matter, Tolman did not object to the reasonable doubt instruction proposed and used at trial. Generally, we will not review an error raised for the first time on appeal. RAP 2.5(a); *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). One exception to the general rule is if the error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *Kalebaugh*, 183 Wn.2d at 255-56. A jury instruction misstating reasonable doubt or shifting the burden of proof to the defendant is constitutional error. *Kalebaugh*, 183 Wn.2d at 256. We review challenged jury instructions de novo, in the context of the instructions as a whole. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

Jury instructions following WPIC 4.01 are constitutional and proper. *Bennett*, 161 Wn.2d at 318. WPIC 4.01's reasonable doubt instruction reads,

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. [If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.]

WPIC 4.01 (the last sentence is bracketed and optional).

Here, the trial court's reasonable doubt instruction to the jury was identical to WPIC 4.01. The trial court also instructed the jury that the State had the burden to prove the elements of the crime beyond a reasonable doubt, and that Tolman, presumed innocent, had no burden to prove that reasonable doubt existed. Because the trial court's reasonable doubt instruction was correct and followed WPIC 4.01, Tolman's argument fails.

14

## IV. LFOs

Tolman argues that the trial court erred when it imposed $1,300 in LFOs without inquiring into his present or future ability to pay them.[5]  Because he failed to object at sentencing, under RAP 2.5, we decline to review this claim of error.

"A defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review."  *State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015).  Generally, we may refuse to review a claim of error raised for the first time on appeal.  RAP 2.5(a).  In our decision in *State v. Blazina*, we declined to reach the defendant's argument regarding the imposition of LFOs at his sentencing because he failed to object and preserve the matter for appeal.  *Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013).

Tolman was sentenced after our decision in *Blazina*, but he did not challenge the trial court's imposition of LFOs at his sentencing.  As our Supreme Court noted, an appellate court may use its discretion to reach unpreserved claims of error.  *Blazina*, 182 Wn.2d at 830; *State v. Lyle*, 188 Wn. App. 848, 852, 355 P.3d 327 (2015).  We decline to exercise that discretion here.

## CONCLUSION

We hold that (1) there was sufficient evidence to convict Tolman of attempting to elude a pursuing police vehicle and the aggravating factor of endangerment by eluding a pursuing police vehicle, (2) the amended information included the essential elements and necessary facts for Count I, attempting to elude a pursuing police vehicle, but that the amended information was

---

[5] Tolman does not distinguish between mandatory and discretionary LFOs.  Our courts do not have discretion to consider a defendant's ability to pay mandatory LFOs.  *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).  Therefore, our discussion is limited to the discretionary LFOs.

insufficient for Count II, possession of a stolen vehicle because it did not mention the essential element of "withhold or appropriate," and (3) the trial court's reasonable doubt instruction was proper. Finally, we decline to review the trial court's imposed LFOs. Accordingly, we affirm Tolman's conviction for Count I, attempting to elude a pursuing police vehicle, reverse his conviction for Count II, possession of a stolen vehicle, and remand to the trial court for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

LEE, J.